In the Matter of the Accounting of LESLIE KIRSCH et al., as Executors of JACQUES ZOLOTNITZKY, Deceased.

Surrogate's Court, New York County, March 10, 1948.

*Leslie Kirsch* and *Sidney Freiberg* for executors, petitioners.
*Milton W. Levy* for Boris Zolotnitzky, respondent.

DELEHANTY, S. The will of deceased in paragraphs II and III acknowledges an indebtedness to a nephew and makes provision for payment of $5,000 to him. Between the date of the will and the date of deceased's death deceased apparently made efforts to pay his nephew the sum contemplated under the will and after failing in such efforts made a codicil in which he gave further instructions respecting the debt and its payment. The account now filed states that an action against the executors and others was initiated by the beneficiary of the noted paragraphs of deceased's will and codicil. In such action the plaintiff sought judgment that he was entitled to one quarter of the assets and property of deceased. The action was dismissed on the merits with costs. An appeal is pending undetermined. The executors ask to be instructed how they can discharge the estate obligation to the plaintiff in that action. He still has failed to take the $5,000 directed to be paid him.

The account also states that this nephew of deceased claims $6,000 because of a ruble transaction between him and deceased in 1918. This claim and another set forth in the account were rejected by the executors. The claim mentioned second was adjusted by delivery to claimant of certain tangible personalty and was withdrawn at the hearing. In the accounting proceeding the liability of the estate under the claim first mentioned was litigated. As it was stated originally, the claim was for the sum of $6,000. At the trial the claim was amended by increasing it to $6,300. As the issues were finally submitted by claimant in his reply brief, the court is asked to award claimant $6,300 with interest from July 24, 1924, or, in the alternative, $6,000 from December 24, 1944. The alternative positions taken by claimant appear to be due to his desire primarily to rely upon a claim for the dollar value of certain rubles paid to or advanced for account of deceased by claimant and his desire secondarily to rely upon a bargain alleged to have been made between him and deceased under which the latter undertook to pay $6,000.

In each aspect the claim stems from transactions occurring in 1918 in the Ukraine. In that year objectant was a practicing attorney at Kiev and deceased was a merchant conducting business either there or in Odessa. The military developments of that year caused deceased to desire to remove his business assets from territory likely to be invaded. Deceased got money from claimant for his own use in leaving the Ukraine and in addition had the benefit of moneys paid by the claimant in aid of the removal of deceased's property from the threatened area.

The total advances to or for account of deceased amounted to 45,000 rubles. The transactions concededly gave rise to a legal liability of deceased to make repayment. That liability arose under Russian law and was of course dischargeable in Russian rubles. Both deceased and claimant were presumably citizens of the Ukraine and their legal rights were determinable under Russian law which governed that territory.

The Russian ruble currently used in commercial transactions in Kiev in 1918 had an exchange value. It is sufficiently shown that 45,000 rubles then had a dollar value of $6,300. However, there was no dollar transaction between deceased and claimant. There was no obligation on the part of deceased to pay anything but rubles at the time the transactions occurred. The rubles of that day were later devalued under decrees of the Soviet Union. The law of Russia applicable at the time of the transactions and that of the Soviet Union enacted later each established a period of limitations which concededly would bar the claim if advanced solely because of the original transactions.

Such original transactions are relied upon by claimant not as the basis to the claim now made but as the basis to an alleged agreement made at Paris, France, on July 24, 1924. By that date both deceased and claimant had left the Ukraine and had reached Paris. It is quite apparent that the subject of deceased's obligation to claimant had been under consideration at Paris. Eventually a letter was written by deceased to objectant on the stated date. This document is relied upon by objectant as creating a wholly new liability to claimant under French law. The validity of the claim for $6,300 depends upon the validity of that contention.

The letter is held by the court to have been nothing more than an offer by deceased to dispose of his moral and legal obligations arising out of the original ruble transaction. The offer was never accepted by claimant. Intrinsically the letter does not create any new or separate obligation on the part of deceased. It was an expression of his sense of obligation because of the earlier transactions. It was dealt with by claimant in this aspect and it constituted only one of a number of evidences of the existence of a dispute between deceased and claimant respecting the extent to which deceased should make provision for claimant. The practical interpretation of the letter by claimant himself requires the court to hold that it furnishes no basis to the claim now primarily asserted by him. Since the court has that viewpoint respecting the letter it need give no

consideration to the discussions at the trial about the correct translation of a particular Russian word found in the letter. The acknowledgment of the original obligation is clear enough in the letter and such acknowledgment sufficed to toll the Russian Statute of Limitations. But such tolling of that statute gives no aid to claimant for again the statute (whether the old or new) has run against any claim based on the original ruble transaction.

The court now turns to the alternative claim for $6,000. Again claimant says that a new agreement was made in New York City by deceased on December 24, 1944, and that under such agreement $6,000 became payable by deceased. That amount with interest from December 24, 1944, is alternatively claimed. Some point is made by the estate representatives respecting the manner in which the claim is stated and the differences between its formulation in the respective bills of particulars furnished by claimant. Point is also made that the agreement alleged constitutes at most an executory accord and under the statute must be in writing to be enforcible. The court gives no consideration to these contentions because it finds no proof of any such agreement as that asserted by claimant to have been made on December 24, 1944. All that occurred on that date was a continuation of the dispute between deceased and claimant as to how much deceased should pay claimant. No agreement to make any payment on any terms was proved and so the claim on the alternative basis fails for lack of proof.

These rulings require that objectant's third objection be overruled. There are left for consideration his objections first, second and fourth. The first and second in effect ask the court to hold in suspense determination of the total interests of objectant in the estate. The court cannot do that. It must assume that the judgment in the Supreme Court is correct and that the claim for an interest in the estate larger than that described in the will is without basis. Accordingly objections first and second are overruled.

The remaining objection and the terms of the petition require the court to make direction for the disposition of the sum of $5,000 payable to objectant under the will and codicil. The account states that objectant has made various assignments of his interests in this fund. The petition asks the court to determine what to do about the assignments. The citation is addressed to the beneficiary and to the respective assignees and gives notice to all of them that instructions and directions of the court are sought concerning the manner of payment of

the sum of $5,000. Criticism is made by objectant that the proposed payment is stated in the citation as intended to be " in full payment and discharge of all claims " by objectant.

The will, as modified by the codicil, obliges the executors to pay objectant $5,000 " as a simple debt " of deceased's estate. While paragraph II of the will refers to " full satisfaction " and paragraph III of the will says that the bequest is in accordance with deceased's " obligations " to objectant under the terms of a paper dated February 4, 1942, the net effect of deceased's testaments is to assure to objectant $5,000 free and clear of all estate tax deductions. The testaments do not warrant a demand by the executors that objectant give a receipt " in full payment and discharge of all claims ".

Direction as to payment would be entirely simple if it were not for the presence here of the assignees. Their right to receive the moneys mentioned in schedule H of the account was conceded by objectant at the hearing. None of the assignees has asked any affirmative action in his own behalf. All of them apparently rely upon the rights established by their assignments. In the circumstances the executors may draw checks to the assignees in the order of their rights specifying that the payment is made to the recipient as assignee of objectant and in partial satisfaction of the payment due him under the testaments of deceased. The executors are first to deduct however the moneys due the estate by way of costs assessed against objectant in the Supreme Court action and in the probate proceeding.

Since there will be a balance remaining after the payments to the assignees consideration must be given to the recital in the account that an attorney claims a lien for legal services to objectant. This attorney was cited. He asked for no affirmative relief and established no lien on the fund. He may be disregarded in its distribution. The balance of the fund may be paid to objectant by check to his order which will state that it is in full for the balance payable to objectant under the terms of the testaments of deceased. If objectant shall refuse to accept such a check, cash in the same amount is to be tendered to objectant against the execution by him of a receipt acknowledging in like terms the payment of such balance. If objectant shall fail for five days after tender at the office of the executors to accept the check or the cash on the terms stated, the balance may be paid into court for account of objectant and thereupon the decree will provide for the full discharge of the executors in respect of objectant's rights under the will.

The final request in the petition and citation for the fixation of fees and disbursements cannot be acted on until proof is made or until, in lieu of such proof, an acknowledged written consent to the payments sought is executed by the residuary legatee and filed with the court. Such consent must be given in terms which expressly state each amount consented to and the basis for the charge to which consent is given. The consent asserted in the account does not suffice since the legatee did not execute the account.

When the record has been so completed, a decree may be submitted, on notice, settling the account in accordance with this decision.